UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EVAN E. COOPER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 17-cv-1076 (APM) |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff Evan E. Cooper, a Navy commander who retired after accepting a non-judicial disposition of misconduct, brings this action under the Administrative Procedure Act seeking review of a Board for Correction of Naval Records ("Board") decision that denied him changes to his naval records. As relevant here, Plaintiff argued that changes were warranted because: (1) the informal misconduct proceeding that led to his retirement was invalid because Plaintiff did not receive meaningful advice of counsel before agreeing to that process; and (2) the Navy breached its promise to recommend to the Secretary of the Navy the highest possible retirement pay grade that Plaintiff could receive. Plaintiff asked the Board to remove records relating to the misconduct proceeding and to correct his records to reflect retirement at the higher pay grade. The Board rejected those requests.

The court concludes that the Board acted arbitrarily and capriciously by failing to address the substance of Plaintiff's first argument, but finds no merit in Plaintiff's second ground for relief.

Accordingly, the court enters judgment in part for Defendant and remands to the Board for further proceedings consistent with this Memorandum Opinion.

## II. BACKGROUND

### A. Events Leading to Plaintiff's Retirement

Plaintiff Cooper is a retired commander in the United States Navy Reserve. Am. Compl., ECF No. 2, ¶¶ 1, 3. The events leading to Plaintiff's retirement are at the heart of this action.

Following an accusation that Plaintiff had submitted fraudulent travel reimbursement claims, the Navy initiated a Non-Judicial Punishment ("NJP") proceeding against Plaintiff. *See* Admin. R. [hereinafter AR], at 6–7, 20–23, 49–52, 95.[1] An NJP is an informal, administrative process that an accused service member may choose in lieu of trial by court-martial to defend against allegations of wrongdoing. *See id*. at 104–06. Critically, by choosing the NJP route, the service member forgoes constitutional rights available during the criminal process. *Cf. Middendorf v. Henry*, 425 U.S. 25, 42–43, 48 (1976) (holding that Fifth and Sixth Amendment rights applicable to criminal proceedings do not apply in a military administrative punishment proceeding). Before accepting the NJP, Plaintiff spoke to a Navy Judge Advocate General ("JAG") about his options. AR at 95–96; Am. Compl. ¶ 4. The legal advice Plaintiff received, however, was limited. The JAG officer told Plaintiff that a Navy regulation prohibited him from establishing an attorney-client relationship with Plaintiff. AR at 95–96; *see also id*. at 72, 75. The JAG officer directed Plaintiff not to discuss the facts of his case with him and provided Plaintiff only "generic advice," including that Plaintiff had the right to refuse the NJP—an action that would set the stage for trial by court-martial. *Id*. at 95–96; *see also id*. at 72, 75. Because of the restricted scope of the discussion, Plaintiff asserts that he did not know "whether it was likely [he] would be convicted if the case went to court-martial." *Id*. at 95–96.

---

[1] All citations to the Administrative Record are to the page numbers of the Appendix filed in the Court of Federal Claims, which has been refiled on the district court docket. *See* ECF No. 6 [hereinafter AR].

Despite the claimed lack of meaningful legal advice, Plaintiff selected the NJP process and pleaded not guilty. *Id.* at 9, 96. He was found guilty at the NJP proceeding on May 28, 2008, and was given a Punitive Letter of Reprimand. *Id.* at 49–52; *see also id.* at 6. *After* the NJP hearing, Plaintiff was provided with a document titled "Accused's Notification and Election of Rights"—a form by which he could waive his right to trial by court-marital—which stated that an accused "may obtain the advice of a lawyer prior to" deciding whether to accept NJP. *Id.* at 72–73, 96, 105. The form contained a question asking Plaintiff whether he wished to talk to a military lawyer or a civilian lawyer, or whether he "voluntarily[,] knowingly, and intelligently" waived his right to talk to counsel before proceeding. *Id.* at 107. Plaintiff did not complete this section of this form. *Id.* at 95–96, 107.

The Punitive Letter of Reprimand that Plaintiff received precipitated his retirement. In a letter dated January 22, 2010, the Navy ordered Plaintiff to show cause before a Navy Board of Inquiry why, in light of the misconduct finding, he should not be discharged from service. *Id.* at 3–4, 96. The letter warned Plaintiff that the show cause proceeding could result in his separation from the Navy and that his retirement pay grade could be lowered to the "last pay grade in which you served satisfactorily," i.e., before his misconduct. *Id.* at 3. For Plaintiff, that meant risking possible separation from the Navy at an O-3 pay grade. Even though Plaintiff held the pay rank of O-5 at the time the show cause order was issued, because his misconduct occurred while he was at the O-4 level, the last pay grade at which he "served satisfactorily" was O-3. *See id.* at 3, 34.

The Punitive Letter of Reprimand, however, offered Plaintiff a way to avoid going before the Naval Board of Inquiry for a show cause proceeding. As explained in the January 22, 2010 letter, Plaintiff could opt to voluntarily retire in lieu of the proceeding, in which case his request that would be processed in accordance with a Navy regulation on retirement grade recommendations. *Id.* at 4, 70. Before making a decision, Plaintiff spoke with a different JAG officer, Andrew House, who

explained the Board of Inquiry process and "negotiated on [Plaintiff's] behalf with the Show Cause Authority" for an agreement where the Show Cause Authority would "recommend to the Secretary that [Plaintiff] retire at the rank of O-5" if Plaintiff retired in lieu of the Board of Inquiry. *Id.* at 96–97. Plaintiff understood, however, that a final decision as to his retirement level rested solely with the Secretary of the Navy and that the Secretary was not obligated to accept the negotiated O-5 retirement-grade recommendation. *Id.* at 97.

Plaintiff requested retirement on February 19, 2010. *Id.* at 1, 5. In a letter formally making the request, Plaintiff stated "[his] understanding that Commander, Navy Personnel Command will recommend my retirement at paygrade O-5 (Commander)," yet acknowledged that the Secretary could retire him at a "lesser paygrade" than his current level. *Id.* at 5. At some later point, the Assistant Commander, Navy Personnel Command for Career Progression, recommended to the Chief of Naval Personnel that Plaintiff be retired at the O-5 pay grade. *Id.* at 511–12. The Deputy Chief of Naval Operations, however, countermanded the Assistant Commander's request and instead, on January 10, 2011, recommended to the Secretary that Plaintiff's retirement be accepted at the rank of O-3. *Id.* at 1–2. The Secretary accepted the lower recommendation, resulting in Plaintiff's retirement at the O-3 pay level. *See id.* at 2.

### B. Plaintiff's Efforts to Correct His Naval Records

Following the Secretary's decision, Plaintiff, through private counsel, petitioned the Board to revise his personnel file to remove the NJP and to reflect his retirement at the pay grade of O-5. *Id.* at 65. As relevant to this case, Plaintiff challenged his waiver of his right to trial by court-martial, arguing that because he had not received meaningful advice of counsel before accepting the NJP, his waiver of rights was not "voluntary, knowing, and intelligent." *See id.* at 73–74. He also challenged his pay grade recommendation. Plaintiff argued that he had agreed to retire voluntarily in exchange

4

for a recommendation to the Secretary of the Navy that he be retired at the O-5 pay grade, but the Navy breached that agreement when "the Deputy Chief of Naval Operations recommended retirement at the grade of O-3." *Id*. at 69, 71.

On July 16, 2014, the Board denied Plaintiff's request in its entirety. *Id*. at 38–40. Describing Plaintiff's first basis for relief as asserting that his "waiver of [the] right to demand trial by court martial was invalid because your military lawyer refused to form an attorney-client relationship with you," the Board concluded that the claim had no merit because Plaintiff "[was] not entitled to have a military lawyer represent you at NJP." *Id*. at 39. The Board further noted that Plaintiff had the opportunity to consult with counsel prior to accepting the NJP, but it said nothing about the limited scope of that consultation. *Id*. As to the pay grade issue, the Board rejected Plaintiff's argument because he had "agreed that the Secretary of the Navy (SECNAV) could retire you in a lesser pay grade." *Id*.

On August 11, 2014, Plaintiff sought reconsideration of the Board's decision, asserting that that the Board "may have misapprehended" two of his points. *Id*. at 41. First, as to the waiver issue, Plaintiff stated that he had "never argued that he was entitled to representation at NJP," as the Board's decision suggested. *Id*. at 42. Rather, he was arguing that "he was entitled to . . . *meaningful consultation* prior to deciding whether to accept NJP." *Id*. Citing to the Federal Circuit case *Fairchild v. Lehman*, 814 F.2d 1555 (Fed. Cir. 1987), Plaintiff asserted that the law required that any waiver of a right to trial by court-martial "must be voluntary, knowing and intelligent," and that this standard is not met when the accused person "does not understand the law in relation to the facts." AR at 42 (internal citation and punctuation omitted). In his case, Plaintiff maintained, the JAG officer's generic guidance fell short of the meaningful legal consultation that the law mandates, thereby invalidating his NJP. *Id*. Second, as to the pay grade issue, Plaintiff asked for

5

reconsideration on the ground that the Board "did not address the . . . failure of the Navy to uphold its end of the bargain" with respect to the promised pay grade recommendation. *Id*. at 41. He argued that his request to retire voluntarily was "predicated on the Navy's promise that it would recommend *to the Secretary* . . . the rank of O-5," but in his case the ultimate recommendation made to the Secretary was retirement at the O-3 level. *Id*. at 41–42 (emphasis added).

By letter dated September 24, 2014, the Board denied Plaintiff's request for reconsideration. *Id*. at 34–36. The Board rejected Plaintiff's contention regarding his retirement at the lower, O-3 pay grade, explaining that "the Commanding Officer of the Navy Personnel Command did not recommend you for retirement in pay grade O-5," but "it was the Chief of Naval Operations that recommended you for retirement in pay grade O-3." *Id*. at 34. The Board did not address Plaintiff's contention regarding the inadequacy of the legal consultation that he received before he accepted the NJP. *See id*. at 34–35.

### C.    Procedural History

Following the Board's denials, on January 20, 2016, Plaintiff filed this action originally in the Court of Federal Claims. *See* Transfer Notice, ECF No. 1, CFC Docket Sheet, ECF No. 1-1. Both parties moved for judgment on the administrative record in the Court of Federal Claims but, before any decision was rendered, Plaintiff amended his complaint and had the case transferred to this District Court on June 1, 2017. *See* CFC Docket Sheet at 2, 4; *see also* Joint Status Report, ECF No. 7, at 1.

Plaintiff challenges the Board's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). Am. Compl. ¶¶ 11, 13. Because Plaintiff's challenge rests on the administrative record, the parties asked the court to decide the case on the briefs previously filed in the Court of Federal Claims. Joint Status Report at 3.

## III. LEGAL STANDARD

Federal courts have the authority to review the decision of a military board of correction using "familiar principles of administrative law." *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989); *see Penland v. Mabus*, 78 F. Supp. 3d 484, 494–95 (D.D.C. 2015). Under the APA, a court must set aside an agency action, finding, or conclusion if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Judicial review under the arbitrary and capricious standard is "highly deferential." *Envtl. Def. Fund, Inc. v. Costle*, 657 F. 2d 275, 283 (D.C. Cir. 1981). "All that is required is that the Board's decision minimally contain a rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotation marks omitted). While the Board's decision need not be "a model of analytic precision," *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995), it must, at a minimum, "provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision," *Coburn v. McHugh*, 679 F.3d 924, 934 (D.C. Cir. 2012) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990)). A Board's decision cannot stand, however, if it does not adequately address a non-frivolous argument made by the petitioner. *See Frizelle*, 111 F.3d at 177; *see also Saint-Fleur v. McHugh*, 83 F. Supp. 3d 149, 157 (D.D.C. 2015); *Pettiford v. Sec'y of the Navy*, 774 F. Supp. 2d 173, 185 (D.D.C. 2011).

## IV. DISCUSSION

### A. Waiver of the Right to Trial

Plaintiff first contends that his waiver of the right to trial by court-martial and his acceptance of the NJP was invalid because he made that election without the meaningful assistance of counsel. Am. Compl. ¶ 13. This is a non-frivolous and potentially dispositive argument.

*See Frizelle*, 111 F.3d at 177. In *Fairchild v. Lehman*, the Federal Circuit held that an accused service-member's waiver of his right to trial by court-martial must be voluntary, knowing, and intelligent—a standard that requires that the individual have "sufficient awareness of the relevant circumstances and likely consequences" of the decision. 814 F.2d at 1558–59 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The decision in *Fairchild* rests upon the Court of Military Appeals' decision in *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977), in which that court recognized that an accused service-member's waiver of his right to trial by court-martial raises due process concerns. *Booker*, 5 M.J. at 243. In light of those concerns, *Booker* held:

> Believing as we do that only a legally trained person can supply the requisite quantum of information necessary for an informed decision, we believe it mandatory that the individual to be disciplined must be told of his right to confer with an independent counsel before he opts for [non-judicial punishment or a summary court-martial].

*Id.* at 243. Drawing on these holdings, Plaintiff argued to the Board that because the Navy JAG officer to whom he was assigned would not discuss the facts of his case and provided only "generic" advice, his waiver of his right to trial by court-martial was invalid. *See* AR at 42, 75. If his waiver was invalid, Plaintiff reasoned, then his NJP and the subsequent show cause proceeding premised on the NJP likewise were invalid. And so, too, was his voluntary retirement, as that decision arose directly out of the flawed NJP process. *See id.* at 42–43.

Despite Plaintiff's clear presentation of the relevant law and the facts of his case, the Board denied his claim in short form, without any analysis that would allow this court to discern the Board's reasoning. *See Dickson*, 68 F.3d at 1404–05. The Board rejected Plaintiff's argument, in the first instance, because he had no right to counsel "*at* NJP." AR at 39 (emphasis added); *see also* Def.'s Mot. to Dismiss/For J. on Admin. R., ECF No. 5-1, at 18 (making the same argument). But Plaintiff never claimed to have such a right; his argument to the Board concerned his right to counsel *before*

8

electing NJP, when faced with the decision whether to waive his right to trial by court-martial. Although Plaintiff raised the Board's "misunderstanding" of his argument in his request for reconsideration, the Board failed altogether to address the issue when it denied Plaintiff's request. *See* AR at 34–35. That failure violated the APA.

Defendant attempts to distinguish *Fairchild* and *Booker* by asserting that, unlike in Plaintiff's case, the plaintiff in *Fairchild* received *erroneous* legal guidance and the plaintiff in *Booker* received *no opportunity* to confer with counsel. Def.'s Reply, ECF No. 5-3, at 7. Those arguments in the present posture are unavailing, however, because "[p]ost-hoc rationalizations, developed for litigation" cannot sustain an administrative decision. *Ass'n of Civilian Technicians v. Fed. Labor Relations Bd.*, 269 F.3d 1112, 1117 (D.C. Cir. 2001). Reviewing the administrative record, as this court must, the Board did not acknowledge the authorities cited by Plaintiff, and the court cannot discern on what basis the Board rejected his argument for more meaningful legal counsel before electing the NJP. *See Foster v. Mabus*, 103 F. Supp. 3d 95, 107–08 (D.D.C. 2015) (explaining that judicial review is limited to the administrative record). The court cannot conjure up reasons to affirm the Board's decision.

In sum, the Board's denial of Plaintiff's adequacy-of-counsel claim is arbitrary because the Board did not "provide an explanation that [would] enable the court to evaluate the agency's rationale at the time of [the] decision." *Coburn*, 679 F.3d at 934 (quoting *Pension Benefit Guar. Corp.*, 496 U.S. at 654). The lack of any "reasoned explanation" for the Board's decision necessitates a remand for further consideration. *See Kreis*, 406 F.3d at 687.

### B. Breach of Contract

The court reaches a different conclusion as to Plaintiff's second claim that the Navy breached its deal with him to "recommend to the Secretary retirement at O-5." Am. Compl. ¶ 11;

*see also* AR at 41–42, 68–71. The Board's decisions reveal that it understood and considered Plaintiff's argument, yet found no merit in it. In its initial review, the Board reasoned that Plaintiff knew that the Secretary did not have to accept the pay grade recommendation and had the authority to retire him at the lower, O-3 pay grade. AR at 39. On reconsideration, the Board further noted that it was the Chief of Naval Operations that issued the O-3 recommendation and that it disagreed with Plaintiff's "allegation that the Commanding Officer of the Navy Personnel Command did not recommend you for retirement in pay grade O-5." *Id.* at 34. By those explanations, the court takes the Board to say that the Navy did not renege on its deal with Plaintiff because, as promised, the Commanding Officer recommended retirement at the O-5 level, and Plaintiff understood that the Secretary ultimately could reject that recommendation. Although not a model of clarity, the Board's reasoning passes muster under the APA's low bar by providing an explanation that facilitates judicial review. *See Coburn*, 679 F.3d at 934. Thus, the court finds no error here.

Moreover, the administrative record belies Plaintiff's claim that he was promised that the Navy would make an O-5 pay grade recommendation *to the Secretary*. *See* Am. Compl. ¶ 11. Plaintiff's resignation letter—in which Plaintiff states that he understood that Commander, Navy Personnel Command would make the desired O-5 recommendation—says nothing about *to whom* that recommendation would be made. AR at 5. The Commanding Officer of the Navy Personnel Command made the promised O-5 recommendation, but it was countermanded by the Chief of Naval Operations, who made an O-3 level recommendation to the Secretary. *See id.* at 34, 39. There is nothing in the relevant paperwork that bargained away that possibility. To the contrary, the Punitive Letter of Reprimand informed Plaintiff that, if he opted for voluntary retirement, his request would be processed according to a Navy regulation, "[SECNAVIST 1920.6C], paragraph 2." *Id.* at 4. That regulation makes clear that voluntary retirement requests are routed through a

chain of command; the rule specifically states that all retirement requests will be "forwarded with appropriate command endorsements" and that each endorsement "shall include a recommendation to approve or disapprove the request and a statement indicating the highest grade in which the officer served satisfactorily." Def.'s Reply, ECF No. 5-3, at 4. Thus, under SECNAVIST 1920.6C, paragraph 2, it was entirely within the discretion of a commanding officer to reject Plaintiff's retirement at the O-5 pay grade; nothing in the administrative record supports that the Navy bargained away that right, as Plaintiff claims.

To the extent Plaintiff's argument rests on his understanding that the pay grade recommendation made to the Secretary would be at the O-5 level, *see* Pl.'s Reply, ECF No. 5-4, at 1–2, Plaintiff's subjective belief cannot invalidate his otherwise unambiguous agreement with the Navy. *Cf. Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F. 3d 265, 278 (D.C. Cir. 2014) (noting that when interpreting a contract, the parties' intent is irrelevant if the written language of the agreement is clear). In this case, then, it is immaterial whether Plaintiff believed that the Commander, Navy Personnel Command would make a retirement pay grade recommendation directly to the Secretary, or whether Plaintiff believed that the Deputy Chief of Naval Operations would adopt the recommendation of the Commander, Navy Personnel Command. What controls are the terms memorialized in the parties' agreement, and in those papers the Navy made no promise that it later breached. Therefore, the Board's rejection of Plaintiff's claim that the Navy reneged on its promise to recommend his retirement at the O-5 pay grade was not arbitrary and capricious.

### III.  CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, or, in the Alternative, for Judgment on the Administrative Record is granted in part and denied in part, and Plaintiff's Cross-

Motion for Judgment on the Administrative Record is denied. Judgment is entered in favor of Defendant on Plaintiff's claim that the Navy failed to recommend his retirement at the O-5 pay grade. This matter is remanded, however, to the Board for Correction of Naval Records for consideration of Plaintiff's claim that his waiver of his right to trial by court-martial was invalid because he made that decision without meaningful assistance of counsel.

      A separate Order accompanies this Memorandum Opinion.

Dated: January 10, 2018

Amit P. Mehta
United States District Judge